UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN DAIDONE,

    Plaintiff,                                        Civil Action No. 17-CV-10348

vs.                                                  HON. BERNARD A. FRIEDMAN

FCA TRANSPORT LLC,

    Defendant.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on defendant's motion for summary judgment [docket entry 20]. Plaintiff has responded, defendant has replied, and plaintiff has filed a supplemental brief. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

This is an employment discrimination action. Plaintiff worked for defendant from 1976 until 2015, most recently as a "shift supervisor for dispatch." Pl.'s Dep. at 39. Plaintiff alleges that he was discharged because of his age, in violation of the Age Discrimination in Employment Act ("ADEA") and the Elliott-Larsen Civil Rights Act ("ELCRA"); because of his disability, in violation of the Americans with Disabilities Act ("ADA") and the Persons With Disabilities Civil Rights Act ("PWDCRA"); and because he requested a leave of absence for medical reasons, in violation of the Family and Medical Leave Act ("FMLA"). Compl. ¶ 26. For relief, plaintiff seeks damages, interest, attorney fees, and costs.

Defendant seeks summary judgment on the grounds that plaintiff cannot make out a prima facie case of discrimination under any of these theories and that, even if he could do so, he

cannot show that defendant's stated reason for discharging him is pretextual. Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Viewing the evidence in the light most favorable to the opposing party, summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See id.* at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

In his response to defendant's motion, plaintiff indicates that his age discrimination claim is based on certain comments he perceived as being ageist and his belief that he was replaced by a younger worker. Pl.'s Br. at 4-6, 11-12. Plaintiff's disability discrimination claim is that after he was injured in an automobile accident in 2011, defendant was slow to give him two requested accommodations (a telephone headset and a more comfortable chair) and his superiors ridiculed his request for a telephone headset. *Id.* at 2-3, 13. Additionally, plaintiff alleges that defendant discharged him because of his disability. *Id.* at 13-14. Plaintiff's FMLA discrimination claim is based on his allegation that one of his supervisors told him in 2014 that "HR is watching your

2

FMLA, so watch what you're doing" and the fact that he was discharged shortly after informing defendant that "he soon would be applying for intermittent FMLA." *Id*. at 4, 10. Regarding pretext, plaintiff argues that a jury should assess defendant's stated reason for terminating him ("us[ing] abusive language toward an employee and in the presence of other employees," Def.'s Ex. Y) because no other employees have been discharged for using profanity, Pl.'s Br. 15, and because one of his supervisors admitted that she violated a workplace rule but was not disciplined. *See* Pl.'s Supp. Br. at 2-3.

Having reviewed the parties' briefs and exhibits, the Court concludes that defendant is entitled to summary judgment on all of plaintiff's claims for the following reasons.

*Age Discrimination Claim*

The parties do not disagree about the legal standards applicable to this claim, which the Sixth Circuit has summarized as follows:

> The ADEA states that "[i]t shall be unlawful for an employer—... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may bring an age discrimination claim by either showing direct evidence of discrimination or through the use of circumstantial evidence. *See Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008). [Plaintiff] does not allege any direct evidence of age discrimination, so we must look at circumstantial evidence and apply the *McDonnell Douglas* burden-shifting framework. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570–74 (6th Cir. 2003). Under this analysis, the employee first has the burden to prove a prima facie case. *Id*. at 574. If he succeeds, the employer must show a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If a satisfactory response is made, the employee has the burden to rebut this reason by proving that it was merely pretext for age discrimination. *Id*. Ultimately, this requires showing by a preponderance of the direct or circumstantial evidence that "but for" his age, the employee would not have suffered the

> adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).
>
> \* \* \*
>
> To make out a prima facie case of age discrimination using circumstantial evidence, the employee must show that he (1) is a member of the protected class; (2) was subject to an adverse employment action; (3) was qualified for the position he held; and (4) was replaced by someone outside the protected class. *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009).

*Terre v. Hopson*, 708 F. App'x 221, 224 (6th Cir. 2017). "The same analysis governs [ADEA and ELCRA] claims." *Bondurant v. Air Line Pilots Ass'n, Int'l*, 679 F.3d 386, 394 (6th Cir. 2012).

Plaintiff does not contend that he has any direct evidence that he was discharged because of his age. Nor may the comments he identified at his deposition as showing anti-age bias be viewed as direct evidence of discrimination. For instance, plaintiff testified that the human resources representative at the facility where he worked, Stacey Simonson, "always in meetings would say, 'And how many years do you have in at Chrysler again?'" Pl.'s Dep. at 191. But when pressed, plaintiff could provide only one example when Simonson made such a comment. During a discussion of the company's policy regarding which employees "were supposed to go out to the accident scene [when] [t]here was a death," plaintiff thought that "it's always been the . . . safety department" that should go, while Simonson believed the policy required plaintiff to do so. *Id.* at 192-93. Simonson's question – "How many years have you worked here?" – is not direct evidence of discrimination because it does not require the conclusion that defendant discriminated against plaintiff because of his age. Rather, the comment could be construed as a criticism of plaintiff's unfamiliarity with the policy despite his many years of service for the company. Likewise, plaintiff indicated that Simonson sometimes asked similar questions – "So how many years does Steve

Daidone have with Chrysler?"– in meetings where the topic was "[o]n how to do certain things." Pl.'s Dep. at 193.

Plaintiff did point to one possibly ageist comment by Ross Sharp, who allegedly "used to call me 'Old man. You can't get out of the chair. Why don't you just retire.'" Pl.'s Dep. at 197. However, plaintiff testified that Sharp was a fellow co-worker who "wanted my job," not a supervisor. *Id.* Plaintiff did not report the comment, and he acknowledged that none of his supervisors made ageist comments. *Id.* at 199.

Since plaintiff has no direct evidence of age discrimination, the *McDonnell-Douglas* analytical framework applies. Plaintiff has failed to state a prima facie case of age discrimination because he has not produced any evidence that he "was replaced by someone outside the protected class." *Terre*, 708 F. App'x at 224. In his response to the instant motion, plaintiff asserts that "Defendant replaced Plaintiff with a person 30 years younger than him [Ex. 1, Daidone Deposition Exhibit 26]." Pl.'s Br. at 6, 11. The cited deposition exhibit is not attached to either party's brief, and the only reference to it during plaintiff's deposition appears on p. 315, where plaintiff identified the exhibit as his "EEOC Intake Questionnaire." In short, there is nothing in this record beyond plaintiff's mere allegation that he was replaced by a younger worker. There is no testimony or other evidence identifying plaintiff's replacement and the replacement's age. Defendant is entitled to summary judgment on plaintiff's age discrimination claims due to plaintiff's failure to state a prima facie case.

*Disability Discrimination*

The Sixth Circuit has summarized the standards governing plaintiff's failure-to-accommodate claim as follows:

5

> To establish a prima facie case of disability discrimination under the ADA for failure to accommodate, [plaintiff] must show that: "(1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Johnson v. Cleveland City Sch. Dist.*, 443 Fed.Appx. 974, 982–83 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004) ). "Once a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer." *Id.* at 983 (citing *DiCarlo*, 358 F.3d at 419).

*Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018). "The PWDCRA substantially mirrors the ADA," *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012), and the parties have not shown that plaintiff's PWDCRA claim should be analyzed under a different standard.

This prong of plaintiff disability discrimination claim is untimely. Plaintiff testified that he was injured in an automobile accident in April 2011 and that he returned to work at the end of August 2011. Pl.'s Dep. at 68, 223. The accommodations he requested were a telephone headset and a more comfortable chair, both of which defendant provided by the end of November 2011. *Id.* at 226, 231, 238-39. Under the ADA, plaintiff had 300 days to file a complaint with the EEOC and then 90 days after receiving a right-to-sue letter to commence a civil action. *See Fritz v. Financialedge Cmty. Credit Union*, 835 F. Supp. 2d 377, 383 (E.D. Mich. 2011). Under the PWDCRA, plaintiff had to bring suit within three years of the date his cause of action accrued. *See Hunter-Ford v. Visteon Corp.*, 2009 WL 3190479, at *5 (E.D. Mich. Sept. 28, 2009). Assuming defendant's alleged slowness in providing the requested accommodations was actionable, plaintiff's failure-to-accommodate claims accrued by November 2011. But plaintiff did not file a complaint

6

with the EEOC until five years later, in September 2016, *see* Def.'s Ex. Z, and he did not commence the instant action until February 2017. Therefore, plaintiff failure-to-accommodate claims under both the ADA and the PWDCRA are plainly time-barred. The Court shall grant summary judgment for defendant on this claim on this basis.

Plaintiff also claims that defendant discharged him because of his disability. Because plaintiff has no direct evidence that defendant discharged him on this basis, the following standards govern this claim under the ADA:

> To make a prima facie showing of wrongful discharge through circumstantial evidence, [plaintiff] must show that 1) he is disabled, 2) he is "otherwise qualified for the position," 3) he "suffered an adverse employment decision," 4) [defendant] "knew or had reason to know" of [plaintiff's] disability, and 5) the "position remained open while the employer sought other applicants or the disabled individual was replaced." *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011) (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)). "[O]nce a plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a non-discriminatory explanation for the employment action[.]" *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). The plaintiff must then show that the defendant's explanation is pretextual. *Id.*

*Cady v. Remington Arms Co.*, 665 F. App'x 413, 419 (6th Cir. 2016). Again, the Court shall use the same standard in analyzing this claim under the PWDCRA.

This claim fails because plaintiff has not shown that he was "disabled" when defendant discharged him. Under the ADA, a disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Similarly, under the PWDCRA disability is defined as a "determinable physical or mental characteristic of an individual, which may result from . . . injury . . . or functional disorder, if the

7

characteristic . . . (A) . . . substantially limits 1 or more of the major life activities of that individual" or a history of or being regarded as having such a characteristic. Mich. Comp. Laws § 37.1103(d).

Plaintiff claims to be disabled because, as a result of his automobile accident in April 2011, he has shoulder and back pain and walks with a limp. Pl.'s Dep. at 68-69, 220-21. The only "physical impairment" plaintiff has identified in connection with this claim is his sore hip, which causes him to limp. While walking is a major life activity under both the ADA and the PWDCRA, *see* 29 C.F.R. § 1630.2(i), *Stevens v. Inland Waters, Inc.*, 220 Mich. App. 212, 217-18 (1996) (adopting the federal definition), plaintiff has not shown that his ability to walk is "substantially limited." Plaintiff worked full time from August 2011, when he returned to work following his accident, until he was discharged in December 2015. He plays golf regularly, does yoga, drives a car, does laundry, washes dishes, runs errands, and coached all of his son's sports teams (basketball, baseball, and soccer) until his son outgrew them. Pl.'s Dep. at 66-71. In light of this evidence, no reasonable jury could find that plaintiff's ability walk is substantially limited. *See Black v. Roadway Express, Inc.*, 297 F.3d 445, 451 (6th Cir. 2002) (affirming summary judgment for defendant because plaintiff was not substantially limited by a knee injury, which restricted his ability to walk and caused him to limp); *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997) ("[M]oderate difficulty or pain experienced while walking does not rise to the level of a disability."). Therefore, defendant is entitled to summary judgment on plaintiff's claims that defendant discharged him because of his disability, as plaintiff has not made out a prima facie case.

*FMLA Retaliation*

Plaintiff's FMLA retaliation claim is governed by the following standards:

> The statute prohibits an employer from retaliating against an employee for exercising her right to FMLA leave. 29 U.S.C. § 2615(a)(2). When a plaintiff attempts to establish an FMLA retaliation claim based on circumstantial evidence, the *McDonnell Douglas* framework governs. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see, e.g., Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507–08 (6th Cir. 2006). Under this framework, the plaintiff bears the initial burden of showing a prima facie case: (1) the employee was carrying out an activity protected by the FMLA, (2) her employer knew she was exercising her rights under the FMLA, (3) the employer took adverse action against the employee, and (4) a causal link existed between the protected activity and adverse action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). If the employee establishes a prima facie case, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse action. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). If the employer offers such a reason, the burden shifts back to the employee to show that the articulated reason is a pretext to mask discrimination. *Id*.

*Cooley v. E. Tenn. Human Res. Agency, Inc.*, 2017 WL 6547387, at *6 (6th Cir. Dec. 22, 2017).

As noted above, this claim is based on the fact that "immediately before his termination, Plaintiff let Defendant know he soon would be applying for intermittent FMLA leave to care for his very ill step-father." Pl.'s Resp. at 4, 10. Plaintiff testified that three weeks before his termination he told Simonson that "come January 1st [2016] I'm going to go on FMLA for my . . . stepfather." Pl.'s Dep. at 206. Simonson's response, which plaintiff found offensive, was "Oh, we're all going through that." *Id.* Plaintiff also testified that sometime in 2014 one of his supervisors, Jennifer O'Bey, told him "HR is watching your FMLA, so watch what you're doing." *Id.* at 203. Plaintiff acknowledged that defendant granted all of his previous requests for FMLA leave, in 2011, 2012, 2013, and 2014, which plaintiff used to care for his ill wife.[1] *Id.* at 46-49.

---

[1] Plaintiff testified that he did not request FMLA leave to care for his wife after 2014 because she moved to Florida. Pl.'s Dep. at 50-51.

9

For present purposes, the Court shall assume that plaintiff has met the first three elements of a prima facie case. Nonetheless, plaintiff's FMLA retaliation claim fails because he has presented no evidence of a causal link between his stated intention to request FMLA leave and his discharge three weeks later. No reasonable jury could interpret Simonson's reaction – "Oh, we're all going through that" – as showing hostility to plaintiff's request. Moreover, plaintiff has not shown that Simonson was involved in the decision to discharge him, and Simonson testified that this decision was made by "operating management," i.e., Marty DiFiore, Bill Dooley, and Jennifer O'Bey, and that she herself was not involved in the decision. Rogowski (nee Simonson) Dep. at 24-25. Further, plaintiff testified that DiFiore "[n]ever got involved" with plaintiff's FMLA requests, that Dooley "told me he'd help me with anything I need" regarding his FMLA requests, and that O'Bey "never said anything either way" regarding his FMLA leave or leave requests. Pl.'s Dep. at 214.

Aside from Simonson's allegedly hostile response to plaintiff's intention to apply for FMLA leave, all plaintiff has shown regarding causation is the comment allegedly made by O'Bey in 2014 that "HR is watching your FMLA, so watch what you're doing," which plaintiff assumed to be a reference to Simonson, as she was the only HR manager at the facility where plaintiff worked. Pl.'s Dep. at 203-04. Even assuming this comment is evidence of anti-FMLA animus, either by O'Bey or Simonson (who, as noted, was not involved in the discharge decision), it is simply too remote in time to have any probative value regarding causation. Temporal proximity alone suffices to make a prima facie showing of causation only if the protected activity and the adverse employment action are "very close in time." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). In the present case, plaintiff was discharged at least one year after O'Bey

10

made this comment, well beyond the "very close" temporal proximity required by *Mickey*. Accordingly, defendant is entitled to summary judgment on plaintiff's FMLA retaliation claim due to plaintiff's failure to make a prima facie showing of causation between his announced intention to request FMLA leave and his discharge.

*Pretext*

Even if plaintiff had stated a prima facie case as to any of his claims, the Court would be compelled to grant summary judgment for defendant because plaintiff has failed to show that the stated reason for discharging him was a pretext for unlawful discrimination or retaliation. The stated reason was "that you used abusive language toward an employee and in the presence of other employees." Def.'s Ex. Y. Plaintiff contends that a jury could disbelieve this explanation because "Defendant's workplace is full of profane language [and] . . . no one – other than Plaintiff – has ever been terminated (or even disciplined) for using profane language in the workplace." Pl.'s Resp. at 6-7. Plaintiff also contends that a jury could disbelieve defendant's explanation because O'Bey admitted at her deposition that she has violated certain workplace rules (e.g., by smoking in a Chrysler vehicle) without being disciplined. Pl.'s Supp. Br. at 2-3.

When an employer presents a legitimate, non-discriminatory reason for the adverse employment action at issue, the employee may attempt to

> establish pretext by showing that the employer's proffered reason (1) has no basis in fact, (2) did not actually motivate the action, or (3) was insufficient to warrant the action. *Seeger*, 681 F.3d at 285. Regardless of the method, the plaintiff must produce sufficient evidence for the jury to conclude that the employer's reason was false, and that discrimination was the real reason. *Id*. Unlike its role in establishing a prima facie case, "the law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext." *Donald*, 667 F.3d at 763.

*Cooley*, 2017 WL 6547387, at *7.

In the present case, plaintiff has a documented history of losing his temper and berating other employees with offensive language. In his 2013 performance review, plaintiff received a "low" rating for "treat[ing] people with dignity and fairness." Def.'s Ex. L. Specifically, this review noted:

> His presentation tends to put people on the defensive, and his sage advice never gets through to the pupils. Steve needs to work on his coaching skills - to remove the emotion - so that his viewpoints are considered more strongly. Steve loses patience, especially with drivers, and by doing so causes disruptions to the Operation. Steve tends to 'shoot from the hip' which al[i]enates Assembly plant Follow up folks, CGT Maintenance, Safety, Scheduling, and the Union. Steve needs to find ways to present only the 'facts,' and tone down his emotions in his messages. . . . His treatment of others tends to diminish the perception that Steve is effectively leading.

*Id.*

On his 2014 performance review, plaintiff again received a "low" rating for "treat[ing] people with dignity and fairness." Def.'s Ex. P. This review noted:

> Steve has improved in the area of keeping things simple, however he now needs to improve in the area of acting with integrity. Steve needs to work on his behavioral patterns to show that he places the company's values over his personal objectives. Acting with integrity means that Steve needs to show others respect. There have been multiple instances of shouting matches between Steve and his coworkers over the past year. Steve needs to improve his interpersonal skills over the next year. . . . Polite communication and respectable behavior are areas that can help Steve stand out as a trustworthy employee.

*Id.*

In September 2014 plaintiff was suspended for five days for what plaintiff described as an "uncharacteristic outburst" that he attributed to "medication I was on." Pl.'s Dep. at 171-75.

Plaintiff testified he did not remember what he said, but he acknowledged that the reason defendant gave for his suspension was that he said to the employee, "Why don't you just fucking quit. If you don't know how to do your job, just fucking quit." *Id.* at 175.

In July 2015 plaintiff was suspended for ten days for an incident that occurred the previous month. Def.'s Ex. S. The notice of this suspension stated:

> The investigation has concluded that your behavior was inappropriate and that you used abusive language toward an employee. This behavior is intolerable from any FCA US LLC employee, but is especially concerning from a Management employee. You have used poor judgment and poor supervisory skills that are detrimental to this Company.

*Id.*

A third incident, which led to plaintiff's termination, occurred in October 2015. In this incident,

> Stephen was filling-in as a Dispatch Supervisor on October 22, 2015 when a HBU employee, George Rakowiecki, called into the supervisor desk to remove a maintenance issue with the tractor. Stephen answered the phone, spoke to George, and put the phone down on the desk. While the phone was laying on the desk, George alleges that Stephen said, "that fuck-up Rakowiecki doesn't want to work, that fuckin poleck [sic] fucked up the truck so he doesn't have to pull any loads".
> This case was investigated on November 2, 2015. The investigation was conducted by Stacey Simonson, with William Dooley, Terminal Manager present. Stephen admitted to saying "that fucking George Rackowiecki, that lazy driver at Sterling." Stephen denies using the work "poleck" [sic].

Def.'s Ex. W. Plaintiff was discharged for "us[ing] abusive language toward an employee and in the presence of other employees." Def.'s Ex. Y. As noted above, the discharge decision was made by "operating management," i.e., Marty DiFiore, Bill Dooley, and Jennifer O'Bey.

Plaintiff testified at length about the widespread use of profanity ("shoptalk") within

13

the facility where he worked. According to plaintiff, "Everybody used shoptalk all the time and still do," by which he meant frequent use of the "F word" and similar language. Pl.'s Dep. at 108-12. Plaintiff's pretext argument is that "nobody else, except me, ever got in any trouble for . . . using shoptalk." *Id.* at 115. Plaintiff also points to Dooley's and Simonson's testimony acknowledging the use of profanity at the plant.

The fact that profanity was common at plaintiff's workplace does nothing to suggest that defendant's reason for discharging plaintiff was a pretext for discrimination or retaliation. Plaintiff was not fired for using profanity, but for "us[ing] abusive language toward an employee and in the presence of other employees." Profanity in an of itself was not the problem, so it is irrelevant if, as plaintiff claims, defendant never fired anyone for swearing.[2] Rather, it was plaintiff's use of abusive language and in the presence of others that defendant says led to plaintiff being discharged. The fact that plaintiff, who was a supervisor, had a documented history of such behavior – i.e., of loudly treating employees rudely and disrespectfully – further weakens his argument that a jury could disbelieve the stated reason for his discharge. As plaintiff has failed to demonstrate pretext, defendant's nondiscriminatory explanation for discharging him stands unrebutted.

Finally, even if plaintiff had cast any doubt on the truthfulness of defendant's explanation for discharging him, defendant would still be entitled to summary judgment. As noted,

---

[2] It is equally irrelevant that O'Bey smoked in her truck but was not disciplined. Plaintiff has not explained why all violations of defendant's standards of conduct should be handled in the same way. To demonstrate pretext, plaintiff would have to show that defendant did not discipline supervisors who abused employees as plaintiff did. Importantly, he has not identified any other supervisors who abused employees (and in the presence of others), and who were repeatedly counseled to stop doing so, but who were not discharged.

plaintiff's burden is not only to "produce sufficient evidence for the jury to conclude that the employer's reason was false," but *also* "that discrimination was the real reason." *Cooley*, 2017 WL 6547387, at *7 (citing *Seeger v. Cincinnati Bell Tel. Co.*, LLC, 681 F.3d 274, 285 (6th Cir. 2012)). For the reasons stated above, plaintiff has produced no evidence from which a jury could find that the "real reason" defendant discharged him was his age, his disability, or his intention to request FMLA leave.

Having considered the evidence in the light most favorable to plaintiff, the Court concludes for the reasons stated above that defendant is entitled to summary judgment on all of plaintiff's claims. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is granted.

Dated: April 13, 2018  s/Bernard A. Friedman
Detroit, Michigan  BERNARD A. FRIEDMAN
 SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 13, 2018.

 s/Johnetta M. Curry-Williams
 Case Manager